UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FREDERICK J. GREDE, as Chapter 11 Trustee for Sentinel Management Group, Inc., <br><br> Plaintiff, <br><br> v. <br><br> FORTIS CLEARING AMERICAS LLC, <br><br> Defendant. | No. 09 C 138 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

**I. BACKGROUND**

The cases addressed here involve Sentinel Corporation, the bankruptcy of which has spawned substantial amounts of litigation. Because a complete history of Sentinel and its demise is fully recounted in *Grede v. Bank of New York*, No. 08 C 2582, 2009 WL 188460 (N.D. Ill. 2009), I will assume the reader's familiarity with those facts and include here only specific facts relevant to these particular motions.

Trustee has filed suit against fifteen defendants, including Fortis, to recover from a group of Sentinel customers (the "Seg 1s") the transfers that they received. The Seg 1s are Futures Commission Merchants ("FCMs") registered with the U.S. Commodity Futures Trading Commission ("CFTC"). They are brokers that trade futures contracts. Customers deposit cash or securities with their FCM to serve as margin for their trades. The Seg 1 Defendants deposit the customer funds in segregated accounts with banks or other FCMs. Section 6d of the CFTC rules dictates that customer deposits are customer property and should be segregated from the FCM's own property in a segregated customer account. 7 U.S.C. §§ 6d(a)(2) & 6d(b); 17 C.F.R.

§§ 1.3(gg), 1.20, 1.25 and 1.26(a). Each of the Seg 1 Defendants in this case contracted with Sentinel, an investment manager and itself a registered FCM (though not a trader), to manage the investments of some customer funds. As an FCM, Sentinel and any bank it selected as custodian were subject to CFTC regulations. Sentinel appointed Bank of New York ("BNY") as custodian, and deposits from Sentinel's Seg 1, as well as Seg 2 (FCM customers of foreign exchanges), Seg 3, and Seg 4 (FCM proprietary funds) customers were placed in segregated accounts.

Just prior to filing for bankruptcy in August 2007, Sentinel halted customer redemptions and sold most of the securities in the Seg 1 account to Citadel for $318 million. Three days later, Sentinel filed an emergency motion with the Bankruptcy Court for an order approving the turnover and distribution by BNY of the Citadel proceeds, which were being held in the Seg 1 account to segregated customer accounts maintained by Defendants. At the hearing, Debtor and the CFTC argued in favor of distributions on the grounds that (1) the proceeds belonged to the customers; and (2) the FCMs could fail causing a ripple effect in the economy. The Securities and Exchange Commission ("SEC") and Seg 3 customers argued against distribution alleging the commingling of the Seg 1 funds with funds in the other accounts. Some of the securities sold to Citadel, they argued, may not have been property of the Seg 1 customers. The Court agreed that the distribution should go forward. The SEC and Seg 3 customers filed for, and the CFTC opposed, a temporary restraining order seeking to block the distribution, but Judge Kennelly did not interfere with the Bankruptcy Court's order. The next day, BNY distributed $297 million of

the Citadel proceeds from the Seg 1 account to segregated Seg 1 customer accounts at other depositories.[1]

Beginning in September 2008, the Trustee initiated adversary proceedings against fourteen Seg 1 Defendants in bankruptcy court, seeking the avoidance and recovery of prepetition transfers and the Citadel proceeds, as well as a declaratory judgment that the remaining $36 million in the Seg 1 account is property of Sentinel's estate. Each of the claims asserted in these avoidance actions arises under the Bankruptcy Code. The four included counts are (1) avoidance and recovery of post-petition transfers under § 549; (2) avoidance and recovery of preferential transfers under § 547; (3) declaratory judgment that the funds transferred to Defendants are property of the estate under § 541; and (4) disallowance of claims under § 502. The central theme of the Trustee's complaints in these cases appears to be that Seg 1 customer funds were commingled with Sentinel's own assets and assets in other Seg accounts, and therefore, the Seg 1 customers' funds are property of Sentinel's bankruptcy estate. The cases have all been reassigned to this court, and the fourteen Defendants have all moved to withdraw the reference, filing substantially similar motions.

## II. STANDARD

Pursuant to 28 U.S.C. § 157(d),

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States

---

[1] *Grede v. Citadel Equity Fund, Ltd.*, No. 09 C 416, has been dismissed pursuant to stipulation.

regulating organizations or activities affecting interstate interests.

(emphasis added).

"The fact that the underlying claim is based on [a federal law regulating interstate commerce] does not, however, mean that consideration of that non-bankruptcy law is required for determining whether to allow or disallow the claim." *In re Baldwin-United Corp.*, 57 B.R. 751, 756-57 (S.D. Ohio, 1985). Withdrawal is mandatory only when non-title 11 issues "require the interpretation, as opposed to mere application, of the non-title 11 statute, or when the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law." *In the Matter of Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir. 1996). The non-title 11 questions involved "need not be of cosmic proportions, but must involve more than mere application of existing law to new facts." *Id.* (quotations and citation omitted).

## III. DISCUSSION

Defendants make two main arguments in support of withdrawing the reference. First, Defendants argue that the court is required to withdraw the reference pursuant to 28 U.S.C. § 157(d) since "the resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or affecting interstate commerce." Defendants claim that consideration of the following two questions is required for resolution of the Seg 1 cases: (1) whether the Commodity Exchange Act ("CEA") and CFTC regulations create a statutory trust thereby excluding customer property from Sentinel's Bankruptcy estate, and whether mishandling of customer property destroys that trust; and (2) whether under the CEA and CFTC Regulations the Seg 1 Defendants received any transfers of property from Sentinel, where the distributions made by Sentinel were made to segregated customer accounts and not to

4

the Seg 1 Defendants' own accounts.[2] Second, Defendants maintain that permissive withdrawal is appropriate here. Because withdrawal of the reference is mandatory in this case, I need not address the issue of permissive withdrawal.

"Property subject to a trust is not property of the bankruptcy estate." *Hill v. Kinzler* (*In re Foster*), 275 F.3d 924, 928 (10th Cir. 2001) (citing *Cunningham v. Brown*, 265 U.S. 1, 11 (1924)). With regard to the first question, Defendants claim that extensive interpretation of the CEA and CFTC regulations will be required, since the court must decide whether the CEA and CFTC imposed a statutory trust that protected customer property deposited with Sentinel regardless of the alleged commingling, or, in other words, whether the CEA, which imposes a statutory trust expressly designed to protect customer funds from the depository and its creditors applies to govern the "property of the estate" issue notwithstanding contrary provisions of bankruptcy law.

In this case, there is no dispute that Sentinel was supposed to hold customer funds in trust under the CEA, the Investment Advisers Act, and by contract. However, Trustee maintains that Defendants' deposits were never actually held in trust, and the real question is whether trust principles apply at all. Even if they did, Defendants "would still have a duty under federal bankruptcy law to trace [their] funds. . ." *Danning v. Bozek (In re Bullion Reserve of North America*), 836 F.2d 1214, 1218 (9th Cir. 1988); *see also Sender v. Heggland Family Trust* (*In re Hedged-Investments Associates, Inc.*), 48 F.3d 470, 474 (10th Cir. 1995) (tracing is required "regardless of whether the funds are held in an express or constructive trust."). Trustee argues

---

[2] A peripheral issue also involves the question of whether the Seg 1 Defendants have an obligation to cover or "top off" any shortfall in customer funds under the CEA or CFTC regulations.

Defendants cannot identify a res given the massive commingling and misuse of funds, and "a tracing fiction should not be employed to elevate [Defendants' claims] over the claims of other creditors if those creditors are similarly situated." *In re Foster*, 275 F.3d at 928. Basic trust concepts and equity among creditors are issues with which the Bankruptcy Court is familiar. Since the parties agree that the money should have been held in trust, the key issues a court need address are (1) whether it actually was, and (2) if no, whether any commingled assets belong to the Seg 1 customers.

Typically these are questions the Bankruptcy Court is well-suited to address. However, Defendants claim that the real question is whether the commingling of the assets transforms the customer property into property of the estate, where section 6d(b) of the CEA is intended, Defendants argue, to protect customer funds from claims by the custodian's creditors. *See e.g., Craig v. Refco*, 624 F. Supp. 944, 946 (N.D. Ill. 1985), *aff'd* 816 F.2d 347 (7th Cir. 1987) ("Congress was concerned with FCMs' practice of using customer margin funds to satisfy their own debts…."). Generally, where funds of the debtor are commingled with customers' assets, all of the assets are presumptively property of the estate. *Danning v. Bozek (In re Bullion Reserve of North America)*, 836 F.2d 1214, 1217-18 (9th Cir. 1988). However, common law trust principles are not applicable to statutory trusts "if they conflict with the language of the statute, the clear intent of Congress in enacting the statute, or the accompanying regulations." *C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 487 (2d Cir. 2001); *see e.g. J.A. Besteman Co. v. Carter's Inc.*, 439 F. Supp. 2d 774, 777 (W.D. Mich. 2006) (When trust and non-trust assets are commingled, beneficiary of statutory trust created by Perishable Agricultural Commodities Act is not obligated to trace assets and the burden shifts to debtor to show that disputed assets were not acquired with

proceeds that were to be held in trust.), *In re College Bound, Inc.*, 172 B.R. 399, 403 (S.D. Fla. 1994) (Where funds at issue are "assets of [ERISA Retirement] Plan under an express statutory trust, the tracing requirement does not apply."). In this case, Defendants argue that common law principles do not apply here since the overall effect of the statute and accompanying regulation "is the creation of a statutory trust that protects customer funds, regardless of commingling or mishandling." In its Amicus Curiae memorandum to the bankruptcy court in this matter, the CFTC noted that "[I]t would be paradoxical if misconduct by an FCM in regard to maintenance of segregation would negate the purpose of segregation, which is to ensure that FCMs treat customer funds as the property of customers." The question of whether the statutory trust is subject to common law trust principles is a "significant open and unresolved issue" of non-bankruptcy law and requires "more than mere application of existing law to new facts."

As to the second question, Trustee maintains that he may recover any transfer "to or for the benefit" of the Defendants, pursuant to §§ 547 and 550 of the Bankruptcy Code, regardless of whether the transfers were made directly to Defendants or to segregated customer accounts. Had the transfers not been made, Trustee argues, Defendants would have had to cover their customers shortfalls. Defendants assert that interpretation of the CEA and CFTC is required here, since it is unclear whether Defendants had any obligation to top off customer shortfalls. Without any such duty, Defendants argue, the transfers imparted no benefit to Defendants. In its Amicus Curiae memorandum to the bankruptcy court in this matter, the CFTC noted that "[a]t all times, the FCM is required to keep enough money or other assets in the segregated customer account to cover the net calculated amount of customer funds." While this appears to be consistent with the legislative purpose of the statute, the CFTC provides no specific statutory support for this

7

requirement, and Trustee points to case law on the topic. This is also an open and unresolved issue of non-bankruptcy law mandating withdrawal.

## IV. CONCLUSION

For the foregoing reasons, the reference should be withdrawn in this case.

ENTER:

James B. Zagel
United States District Judge

DATE: October 28, 2009